**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

────────────────────────────────

**MALIK MUHAMMAD, 96-A-3015,**

                               **Plaintiff,**               **08-CV-473A(Sr)**

**v.**

**LESTER WRIGHT, et al.,**

                               **Defendants.**

────────────────────────────────

## REPORT, RECOMMENDATION AND ORDER

        This case was referred to the undersigned by the Hon. Richard J. Arcara, in accordance with 28 U.S.C. § 636(b)(1), for all pretrial matters and to hear and report upon dispositive motions.  Dkt. #31.

        Plaintiff filed this *pro se* action on or about June 25, 2008 seeking relief pursuant to 42 U.S.C. § 1983.  Dkt. #1.  In his complaint, plaintiff alleges that on March 10, 2008, while incarcerated at the Attica Correctional Facility ("Attica"), defendants were deliberately indifferent toward his medical care in violation of the Eighth Amendment.  Dkt. #1.  Specifically, plaintiff alleges that on March 10, 2008, defendants reduced the dosage of (poured out) his intravenous steroid medication that he was scheduled to receive on that day as part of his treatment for multiple sclerosis.  Dkt. #1, pp.4-5.  Presently pending before this Court is defendants' motion for summary judgment.  Dkt. #66.  For the following reasons, it is recommended that defendants' motion for summary judgment be granted.

## PROCEDURAL BACKGROUND

Plaintiff commenced this action on or about June 25, 2008, against Lester

Wright, the former Chief Medical Officer for the New York Department of Correctional

Services ("DOCS"); James Conway, the former Superintendent at Attica; Roslyn

Killinger, a Registered Nurse and the Nurse Administrator at Attica; Dr. Jadow Rao a

physician and Facility Health Services Director at Attica; and, "Baldwin, Attica

Registered Nurse."[1]  Defendants Wright, Conway, Killinger and Rao filed their Answer

to the Complaint on August 6, 2009.  Dkt. #6.  After engaging in the exchange of

discovery, defendants filed the instant motion for summary judgment on February 23,

2011.  Dkt. #66.  Defendants' motion contained the required "Notice to *Pro Se* Litigants

Opposing Summary Judgment" advising plaintiff that his failure to respond to the instant

motion may result in the dismissal of his action without a trial.  Moreover, the Notice

specifically states that plaintiff may not oppose summary judgment simply by relying on

---

[1] A review of the Western District of New York docket sheet for this case reveals that the Summons issued for "Registered Nurse Baldwin" was returned unexecuted with the notation, "RTS - Cannot Identify" [Return to Sender - Cannot Identify].  Dkt. #4. This Court issued a Decision and Order pursuant to *Valentin v. Dinkins* requesting the New York State Attorney General's Office to ascertain a proper address for defendant Baldwin.  Dkt. #11.  Thereafter, this Court issued a Text Order directing that the United States Marshal serve a copy of the Summons, Complaint, the Court's Decision and Order concerning plaintiff's motion for leave to proceed *in forma pauperis* upon "Registered Nurse Baldoni" at Worldwide Travel Staffing Lt, 2829 Sheridan Drive, Tonawanda, New York 14150.  Dkt. #12.  Accordingly, a Summons was reissued to Registered Nurse Baldoni on October 30, 2009. A review of the records maintained by the U.S. Marshal Service reveals that the Summons was mailed out on November 6, 2009 and to date, nothing has been received in response.  As will be discussed below, because this Court concludes, despite giving plaintiff the benefit of every inference, that the facts as plaintiff presents them are simply insufficient to defeat the instant motion, the fact that defendant "Baldwin, Attica Registered Nurse" has failed to appear in the instant action does not adversely impact the Court's recommendation that defendants' motion for summary judgment should be granted.

the allegations in the complaint, rather, plaintiff must submit evidence, such as witness statements or documents countering the facts asserted by defendants.  *See* Dkt. #66.

On the same day defendants filed the instant motion, the Court issued a Text Order setting the following schedule for the submission of papers: plaintiff's response due by March 31, 2011 and replies due by April 22, 2011.  Dkt. #73. Thereafter, on two separate occasions, plaintiff requested and this Court granted his requests for additional time to file his response to the instant motion.  Dkt. ##74 and 80.  In fact, plaintiff was ultimately given until June 30, 2011, four months after the motion was filed, to file his response.  Plaintiff failed to file a response by June 30, 2011.  The Court notes that it recently received a letter from plaintiff dated August 13, 2011, relating to his two cases pending before this Court.  In his letter, plaintiff reminds the Court of his prior letter wherein he advised that his eyeglasses were being withheld by the Sing Sing Medical Department.  Nowhere in plaintiff's most recent letter did he request additional time to submit a response to the instant motion and the fact that plaintiff has allegedly been without his eyeglasses has not impaired his ability to correspond with the Court.  Plaintiff has been given more than sufficient opportunity to respond to the instant motion and has failed to do so.

## FACTS

Plaintiff alleges that in or about April 2003, he was diagnosed with multiple sclerosis.  Dkt. #1, p.3.  Plaintiff further alleges that following his diagnosis, his course

of treatment was: "1. weekly injection of avonex, 2. specialized vitamins, 3. steroid therapy treatment for three (3) days to decrease plaintiffs head lesions that was [sic] discovered after the MRI was performed, 4. physical therapy sessions."  *Id*.  On February 7, 2008, with the approval of defendant Dr. Jadow Rao, plaintiff was referred to the Buffalo General Hospital Neurology Clinic for tests related to his multiple sclerosis.  Dkt. #67, ¶ 3.  Plaintiff was seen at the Buffalo General Hospital Neurology Clinic on March 6, 2008, where he was examined and evaluated in accordance with the February 7, 2008 referral.  *Id*. at ¶ 4.  The physical examination of plaintiff, as well as a review of plaintiff's MRI, revealed "enhanced lesions suggesting active disease while on Avonex."  *Id*. at ¶ 5.

The Neurology Department recommended the following care plan for plaintiff:  check for neutralizing antibodies and Avonex levels, start one gram of Solumedrol, a steroid, intravenously for three days and continue Avonex for now.  Dkt. #67, ¶ 6; Dkt. #68, ¶ 9; Dkt. #68, p.7.  On March 7, 2008, Physician's Assistant Alicia Schunk ordered the Neurology Department's recommended plan of care and Dr. Jadow Rao approved the orders.  Dkt. #67, ¶ 7.  Thereafter, plaintiff was admitted to the Attica infirmary and the first dose of one gram of Solumedrol was administered to plaintiff intravenously on March 8, 2008 at 11:30 a.m.  *Id*. at ¶¶ 8-9.  The second dose of one gram of Solumedrol was administered to plaintiff intravenously on March 9, 2008 at 9:00 a.m.  *Id*. at ¶ 10.  The third and final dose of one gram of Solumedrol was administered to plaintiff intravenously on March 10, 2008 at 12:30 p.m.  *Id*. at ¶ 11.

-4-

On March 8 and 9, 2008, the one gram of Solumedrol was administered to plaintiff in an intravenous bag containing 500 cc of normal saline solution. *Id*. at ¶ 12. On the third and final day, March 10, 2008, the exact same dose of Solumedrol, one gram, was administered to plaintiff, however, it was administered in 250 cc of normal saline. *Id*. at ¶ 13. The decision to administer the third and final dose of Solumedrol in 250 cc of normal saline instead of 500 cc of normal saline was approved by Dr. Jadow Rao. *Id*. The amount of the normal saline used does not affect the dosage of the steroid medication administered. *Id*. at ¶ 14. In other words, whether the one gram of Solumedrol was administered with 250 cc or 500 cc of normal saline, the dosage of the steroid medication, one gram, remains the same. *Id*. at ¶ 15. Thus, notwithstanding plaintiff's conclusion to the contrary, on each of the three days, plaintiff received the recommended dose of Solumedrol. *Id*. at ¶¶ 16-17.

On or about March 17, 2008, plaintiff filed a grievance concerning the treatment he received on March 10, 2008. Dkt. #69, pp.6-7. Specifically, plaintiff alleged that a nurse poured his steroid medication out of the intravenous bag. *Id*. In his grievance, plaintiff requested the following relief: "to have/learn all details of the incident and parties related to such incident" and "to have/learn all time frames, dates and AHR's..." *Id*. Plaintiff's grievance was referred to Roslyn Killinger, Nurse Administrator, for investigation. Dkt. #67, ¶ 20. Roslyn Killinger immediately investigated plaintiff's grievance and reported that the "nurses followed protocol while administering" plaintiff's medication. *Id*. at ¶ 21. In addition, she further recommended

that plaintiff request copies of his medical records to acquire the information he sought

in his grievance.  *Id*.  Based upon her review of plaintiff's medical records, Roslyn

Killinger concluded that the proper protocol was followed by the nurses and further that

there was no evidence to the contrary.  *Id*. at ¶ 22.  Indeed, Roslyn Killinger found no

evidence to support plaintiff's allegation that a nurse had poured out his medication.  *Id*.

at ¶ 23.  By Memorandum dated March 24, 2008, Roslyn Killinger conveyed her

findings to the Inmate Grievance Program Supervisor.  *Id*. at ¶ 25.


On March 28, 2008, the Inmate Grievance Resolution Committee

responded to plaintiff's grievance and advised plaintiff to "contact the nurse

administrator with a request for all the documents he wants and include a disbursement

form."  Dkt. #69, p.11.  Plaintiff appealed the IGRC determination to the

Superintendent.  Dkt. #67, ¶ 27.  On April 10, 2008, the Superintendent denied

plaintiff's appeal and plaintiff thereafter appealed the Superintendent's determination to

the DOCS Central Office Review Committee ("CORC").  Dkt. #69, p.13.  CORC

unanimously upheld the Superintendent's determination and denied plaintiff's grievance

on May 21, 2008.  Dkt. #67, ¶ 29; Dkt. #69, p.16.  Notwithstanding the foregoing,

plaintiff alleges that his grievance was ignored and further that the DOCS personnel

involved were deliberately indifferent to his concerns.  Contrary to plaintiff's assertions,

defendants maintain that plaintiff's grievance was reviewed, investigated and decided.

Dkt. #67, ¶ 31.

Defendants argue that plaintiff's allegations that defendants Conway and Wright ignored his complaint/grievance about the treatment he received on March 10, 2008 are belied by the documentary evidence in the record.  Contrary to plaintiff's allegation, defendant Conway, the former Superintendent of Attica, did not ignore his grievance, rather, he reviewed the grievance on the grounds that the investigation revealed that proper protocol was followed for the administration of plaintiff's medication on March 10, 2008.  *Id*. at ¶ 35.  With respect to defendant Wright, plaintiff alleges that he sent a detailed written complaint to Dr. Wright setting forth what he believed occurred on March 10, 2008 and that Dr. Wright failed to conduct an investigation "to correct the wrongful acts/omissions."  Dkt. #1, p.5.  Plaintiff further alleges, "[u]nder care, custody, and control, defendant Wright side-stepped his area of employment responsibility which easily occurred when defendant L. Wright ignored his obligation to respond to plaintiffs [sic] letter, despite Lester Wright having knowledge of the plaintiff being deprived of his eighth amendment right when his medical treatment was hindered on March 10, 2008."  *Id*. at p.6.

As explained in defendants' motion for summary judgment, prior to his retirement from DOCS, Dr. Wright was the Chief Medical Officer for fifteen years and in that capacity he directly supervised a central office staff of over 78 individuals.  Dkt. #67, ¶ 39.  Moreover, Dr. Wright oversaw approximately 1,780 medical professionals in 70 different correctional institutions, including, doctors, nurses, physician assistants, dentists, dental hygienists, laboratory technicians, X-ray technicians, and nurse practitioners.  *Id*.  In support of the instant motion for summary judgment, defendants

submitted an affidavit from the former Regional Health Service Administrator for DOCS (the current Assistant Director of Health Services for DOCS), Holly Collett.[2]  In her affidavit, Ms. Collett details that both she and Dr. Wright routinely received thousands of letters from inmates housed at various DOCS facilities.  *Id*. at ¶ 40.  According to Ms. Collett, when Dr. Wright would receive letters from inmates, the letters were assigned to senior staff members, such as Ms. Collett, for investigation and response on behalf of Dr. Wright.  *Id*. at ¶ 41.

Plaintiff only sent one letter to Dr. Wright in 2008 and that letter was dated February 12, 2008, nearly one month prior to the alleged March 10, 2008 incident.  *Id*. at ¶ 42.  In his February 12, 2008 letter, plaintiff complained that he was not receiving his pain medication for his lower back pain and his back brace was never returned to him once he arrived at Attica.  Dkt. #71, pp.4-8.  Plaintiff's February 12, 2008 letter was referred by Dr. Wright to senior staff member Richard Lester for investigation.  *Id*. at ¶ 43.  Richard Lester investigated and closed the matter on February 26, 2008.  In fact, Mr. Lester noted that the plaintiff "recently consulted with neurology and has been returned for a rtc at Buffalo General Hospital upon completion of multiple Magnetic Resonance images.  Inmate has signed attendance contracts."  *Id*. at ¶ 44.  Because Richard Lester determined that plaintiff's concerns were being addressed, he indicated that the matter had been investigated and closed.  Dkt. #67, ¶ 45; Dkt. #71, pp.9-10.

---

[2] As described in defendants' motion for summary judgment, defendant Wright was not accessible and therefore unable to submit an affidavit in support of the instant motion because he is currently in the process of relocating to Australia.  Dkt. #67, ¶ 38.

Notwithstanding plaintiff's allegations to the contrary, Dr. Wright's office has no record

of receiving any correspondence from plaintiff concerning the treatment he received on

March 10, 2008.  Dkt. #67, ¶ 47.

## DISCUSSION AND ANALYSIS

As a threshold matter, defendants Conway, Wright and Killinger argue

that they are entitled to summary judgment because they did not have any personal

involvement with respect to plaintiff's medical care and therefore, they may not be held

liable for acting with deliberate indifference toward plaintiff's medical care in violation of

the Eighth Amendment.  Second, defendants argue that plaintiff failed to establish the

necessary elements of an Eighth Amendment deliberate indifference claim.  In the

alternative, defendants argue that they are entitled to qualified immunity insofar as they

acted in good faith and that it was objectively reasonable for them to believe that they

were not violating plaintiff's constitutional rights.  Because the Court agrees that the

defendants are entitled to judgment as a matter of law on the grounds that plaintiff

failed to establish that he suffered from a sufficiently serious medical condition and that

defendants were deliberately indifferent to his medical needs, the Court need not reach

the issues of whether defendants Conway, Wright and Killinger were personally

involved and whether defendants are entitled to qualified immunity.

## Summary Judgment

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed.R.Civ.P. 56(c).  "In reaching this determination, the court must assess whether there are any material factual issues to be tried while resolving ambiguities and drawing reasonable inferences against the moving party, and must give extra latitude to a *pro se* plaintiff."  *Thomas v. Irvin*, 981 F. Supp. 794, 798 (W.D.N.Y. 1997) (internal citations omitted).

A fact is "material" only if it has some effect on the outcome of the suit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *see Catanzaro v. Weiden*, 140 F.3d 91, 93 (2d Cir. 1998).  A dispute regarding a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248; *see Bryant v. Maffucci*, 923 F.2d 979 (2d Cir.), *cert. denied*, 502 U.S. 849 (1991).

Once the moving party has met its burden of "demonstrating the absence of a genuine issue of material fact, the nonmoving party must come forward with enough evidence to support a jury verdict in its favor, and the motion will not be defeated merely upon a 'metaphysical doubt' concerning the facts, or on the basis of

conjecture or surmise." *Bryant*, 923 F.2d at 982 (internal citations omitted).   A party

seeking to defeat a motion for summary judgment

> must do more than make broad factual allegations and
> invoke the appropriate statute.  The [party] must also show,
> by affidavits or as otherwise provided in Rule 56 of the
> Federal Rules of Civil Procedure, that there are specific
> factual issues that can only be resolved at trial.

*Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995).


The failure of a litigant who moves for summary judgment against a *pro se*

party to provide the *pro se* party with notice of the requirements of Rule 56 of the

Federal Rules of Civil Procedure and the consequences of noncompliance therewith will

result in the vacatur of summary judgment.  *Irby v. New York City Transit Authority*, 262

F.3d 412, 413 (2d Cir. 2001).  Rule 56 requires that,

> [a]n adverse party may not rest upon the mere allegations or
> denials of the ... pleading, but [rather] the ... response, by
> affidavits or [other documentary evidence] as provided in this
> rule, must set forth specific facts showing that there is a
> genuine issue for trial.  If the opposing party does not so
> respond, summary judgment should, if appropriate, be
> entered against that party.

Fed.R.Civ.P. 56(e).


Here, consistent with Local Rule 56.2, defendants provided plaintiff with

notice of the requirements of Rule 56 and the possible consequences of failure to

respond to a summary judgment motion.  Dkt. #66.  Thus, there can be no dispute that

plaintiff received actual notice of the consequences of his failure to comply with the

requirements of Rule 56 and failure to respond to a summary judgment motion.  As

provided in Local Rule 56.1(c), all material facts set forth in defendants' Local 56.1

Statement of Facts, will be deemed admitted because such statements were "not

controverted by the statement required to be served by [plaintiff]."  Local Rule 56.1(c).


## Deliberate Indifference to Serious Medical Needs

In *Estelle v. Gamble*, the United States Supreme Court determined that

"deliberate indifference to serious medical needs of prisoners constitutes the

'unnecessary and wanton infliction of pain' proscribed by the Eighth Amendment" to the

United States Constitution.  429 U.S. 97, 104 (1976).  To establish an unconstitutional

denial of medical care that rises to the level of an Eighth Amendment violation, a

plaintiff (prisoner) must prove, beyond mere conclusory allegations, that the defendant

acted with "deliberate indifference to [his] serious medical needs."  *Estelle*, 429 U.S. at

104.  More specifically, the prisoner must demonstrate both that the alleged deprivation

is, in objective terms, "sufficiently serious," and that, subjectively, the defendant is

acting with a "sufficiently culpable state of mind."  *Hathaway v. Coughlin*, 37 F.3d 63, 66

(2d Cir. 1994), *cert. denied*, 513 U.S. 1154 (1995).  Both the objective and subjective

components must be satisfied in order for a plaintiff to prevail on his claim.  *Hathaway*

*v. Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996).

**Objective Component**

Under the objective component, in assessing whether a medical condition is "sufficiently serious," the Court considers all relevant facts and circumstances, including whether a reasonable doctor or patient would consider the injury worthy of treatment; the impact of the ailment upon an individual's daily activities; and, the severity and persistence of pain. *See Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998). A serious medical condition exists where the failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain. *Id.* Indeed, the Second Circuit has held that the alleged deprivation must be "sufficiently serious, in the sense that a condition of urgency, one that may produce death, degeneration, or extreme pain exists." *Hemmings v. Gorczyk*, 134 F.3d 104, 108 (2d Cir. 1998). "[I]n most cases, the actual medical consequences that flow from the alleged denial of care will be highly relevant to the question of whether the denial of treatment subjected the prisoner to a significant risk of serious harm." *Smith v. Carpenter*, 316 F.3d 178, 187 (2d Cir. 2003).

The types of conditions which have been held to meet the constitutional standard of serious medical need include: the failure to treat a painful and disfiguring facial keloid, *Brock v. Wright*, 315 F.3d 158, 160 (2d Cir. 2003); refusal to treat a cavity at risk of "acute infection[ ], debilitating pain and tooth loss" unless prisoner consented to extraction of another diseased tooth, *Harrison v. Barkley*, 219 F.3d 132, 136-37 (2d Cir. 2000); untreated dental problems that resulted in chronic pain for a period of six

months resulting in tooth degeneration, *Chance*, 143 F.3d. at 702; failure to treat a

ruptured Achilles tendon which resulted in swelling and pain, *Hemmings*, 134 F.3d at

106-07; confiscation of prescription eyeglasses necessary to correct serious vision

problem and subsequent denial of medical treatment resulting in loss of vision in one

eye, *Koehl v. Dalsheim*, 85 F.3d 86, 87-88 (2d Cir. 1996); failure to remove broken hip

pins from prisoner's hip for over three years despite prisoner's complaint of persistent

pain, *Hathaway*, 37 F.3d at 64-65; and, loss of an ear where doctor threw away

prisoner's ear and stitched up the stump, *Williams v. Vincent*, 508 F.2d 541, 543 (2d

Cir. 1974).


### Subjective Component

The subjective component for the establishment of a claim of deliberate

indifference to a serious medical need requires that the plaintiff establish that the

defendant acted with a "sufficiently culpable state of mind" so as to violate the Eighth

Amendment's cruel and unusual punishment clause.  *Wilson v. Seiter*, 501 U.S. 294,

298 (1991).  "[A] prison official does not act in a deliberately indifferent manner unless

that official 'knows of and disregards an excessive risk to inmate health or safety; the

official must both be aware of facts from which the inference could be drawn that a

substantial risk of serious harm exists, and he must also draw the inference.'"

*Hathaway*, 37 F.3d at 66, *quoting Farmer v. Brennan*, 511 U.S. 825, 837 (1994).  In

*Estelle*, the Supreme Court ruled that deliberate indifference may manifest itself in a

doctor's refusal to administer needed treatment, a prison guard's intentional denial or

-14-

delay in granting an inmate access to medical care, or intentional interference with prescribed treatment. *Estelle*, 429 U.S. at 104-05.

"The subjective element of deliberate indifference 'entails something more than mere negligence . . . [but] something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result.'" *Hathaway*, 99 F.3d at 553, *citing Farmer v. Brennan*, 511 U.S. 825 (1994); *see also Hernandez v. Keane*, 341 F.3d 137, 144 (2d Cir. 2003), *cert. denied*, 543 U.S. 1093 (2005). The Supreme Court further stated in *Estelle* that, "an inadvertent failure to provide adequate medical care cannot be said to constitute 'an unnecessary and wanton infliction of pain' or to be 'repugnant to the conscience of mankind.'" *Estelle*, 429 U.S. at 105-06.  Thus, the Supreme Court added,

> [a] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment.  Medical malpractice does not become a constitutional violation merely because the victim is a prisoner.  In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.

*Id*. at 106; *see also Chance*, 143 F.3d at 703 (stating "[s]o long as the treatment given is adequate, the fact that a prisoner might prefer a different treatment does not give rise to an Eighth Amendment violation").  Indeed, "it is well-established that mere disagreement over the proper treatment does not create a constitutional claim.  So long as the treatment given is adequate, the fact that a prisoner might prefer a different

treatment does not give rise to an Eighth Amendment violation."  *Chance*, 143 F.3d at 703.

Here, plaintiff alleges that defendants were deliberately indifferent to his serious medical needs on March 10, 2008 when, according to plaintiff, he was not given the appropriate dose of Solumedrol, the intravenous steroid medication prescribed to treat plaintiff's enhanced lesions believed to be the result of active disease while plaintiff was being treated with Avonex for his multiple sclerosis.  More specifically, plaintiff alleges that a nurse poured out his steroid medication to a quantity that was less than the quantity prescribed by the doctor.

There is no dispute that following his examination at the Buffalo General Hospital Neurology Clinic on March 6, 2008, plaintiff was prescribed Solumedrol, one gram intravenously for three days and instructed to continue Avonex.  It is equally undisputed that plaintiff received the first two doses of Solumedrol intravenously on March 8 and 9, 2008.  On March 8 and 9, 2008, the one gram of Solumedrol was administered in an intravenous bag containing 500 cc of normal saline.  The third dose, administered on March 10, 2008, was one gram of Solumedrol administered in an intravenous bag containing 250 cc of normal saline.  Each of the three prescribed doses was the same, one gram of Solumedrol.  Except for plaintiff's conclusory allegation that a nurse poured out his steroid medication, plaintiff fails to allege any facts to even suggest that the alleged pouring out of his steroid medication could cause a "condition of urgency, one that may produce death, degeneration or extreme plain."

-16-

In fact, plaintiff does not, because he cannot, allege any actual medical consequences that flow from this alleged denial of care.

           With respect to the subjective component of an Eighth Amendment claim, plaintiff cannot sustain his burden of demonstrating that the defendants acted with deliberate indifference.  Moreover, plaintiff's conclusory allegation that he did not receive the full one gram of Solumedrol because he claims a nurse poured it out is without merit.  As described at length by defendants, plaintiff's third and final dose of Solumedrol was administered in an intravenous bag with 250 cc of normal saline, as opposed to 500 cc of normal saline used with the first two doses.  As prescribed, the amount of the steroid, one gram, remained the same for each of the three doses. Thus, plaintiff's complaint is nothing more than a disagreement over the treatment given, to wit:  the use of 250 cc of normal saline as compared to 500 cc of normal saline and therefore does not, under well-settled Second Circuit precedent, create a constitutional claim.  Accordingly, this Court concludes that plaintiff's claim of deliberate indifference to his medical needs in violation of the Eighth Amendment is without merit and recommends that defendants' motion for summary judgment be granted.

**<u>CONCLUSION</u>**

For the reasons set forth above, it is recommended that defendants' motion  for summary judgment (Dkt. #66), be granted.

Pursuant to 28 U.S.C. § 636(b)(1), it is hereby

ORDERED, that this Report, Recommendation and Order be filed with the Clerk of the Court.

ANY OBJECTIONS to this Report, Recommendation and Order must be filed with the Clerk of this Court within fourteen (14) days after receipt of a copy of this Report, Recommendation and Order in accordance with the above statute, Fed.R.Civ.P. 72(b) and Local Rule 72.3(a)(3).

The district judge will ordinarily refuse to consider *de novo* arguments, case law and/or evidentiary material which could have been, but were not presented to the magistrate judge in the first instance.  *See, e.g., Patterson-Leitch Co. v. Massachusetts Mun. Wholesale Electric Co.*, 840 F.2d 985 (1st Cir. 1988).

<u>Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order</u>.  *Thomas v.*

-18-

*Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed.2d 435 (1985); *Wesolek v. Canadair Ltd.*, 838 F.2d 55 (2d Cir. 1988).


    The parties are reminded that, pursuant to Rule 72.3(a)(3) of the Local Rules for the Western District of New York, "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority." <u>Failure to comply with the provisions of Rule 72.3(a)(3), or with the similar provisions of Rule 72.3(a)(2) (concerning objections to a Magistrate Judge's Report, Recommendation and Order), may result in the District Judge's refusal to consider the objection.</u>


    **SO ORDERED.**


DATED:  Buffalo, New York
     September 6, 2011


         *s/ H. Kenneth Schroeder, Jr.*
         **H. KENNETH SCHROEDER, JR.**
         **United States Magistrate Judge**